Good morning. May it please the Court, Karen Schoen on behalf of the Department of Defense. And I'll be splitting my time today with Rex Highkey, who will be presenting argument on behalf of Sikorsky. And if I may, I'd like to reserve a minute for rebuttal, if I may. What's at issue in this case is proprietary information contained in Sikorsky's comprehensive small business subcontracting plan, including the names of some contractors that Sikorsky deals with and details about their business relationships, information about how the company decides, as it puts it, whether to make or buy certain items, information about how Sikorsky trades its employees and other strategies that the company employs to enhance its small business subcontracting program. Disclosure of this information is likely to cause substantial competitive harm to Sikorsky. And indeed, this is precisely the sort of information that Exemption 4 was meant to protect. In ordering disclosure of the entire subcontracting plan, however, the district court incorrectly held that none of this information is protected by Exemption 4. The district court also incorrectly held that the signatures and business contact information of certain individuals identified in the plan are not protected by Exemption 6. Let me ask you a question. Does the way your client dealt with this, does it play any part in our decision? I mean, they filed the request at 20 days to notify whether you're going to comply or not. You filed finally after 30 days, something suggesting you wanted 30 days and that you needed the unusual circumstances, which you could have. And then you didn't do anything. On November 4, they finally had to send a letter of appeal. Still didn't do anything. Finally, on May the 12th, 2014, they filed this action. Then it had to be a case management conference. And here we are now at that point. We've got a motion to compel. And still, it takes you forever to do anything. You file an answer finally, and that answer doesn't at all respond to what the district court suggested. And then you file a cross-motion for summary judgment. At that point, the district court's pretty mad. We'd say it differently in Idaho, but mad. And now you're saying, okay, I submitted an affidavit before. I'm now submitting another affidavit. I'm not going to do it the way you told me to do it. I'm not going to give you the report, take it down face-by-face, and tell me what the basis is by what you do. I'm just going to give you whatever the heck I want to give you. We'd say that a little bit different in Idaho. And you're going to have to deal with it. Is that the way the Department of Defense always responds? I mean, to me, if I had to give deference to the district court in their decision, I'd give a lot of deference here. So do I take that into account? No, Your Honor. No, I have to just throw it out and say you can act whatever you want on a FOIA request, be as ornery as you want, as disgusting as you want, and I still have to give you the right to argue the exemption on four? Your Honor, I mean, generally, in terms of the procedure or the process that the agency follows, there generally isn't a claim based on that. The district court did ultimately reach the merits. And, you know, when we submitted, we submitted both a redacted and an unredacted version of the plan for the court's in-camera review, along with the declaration. And as it turns out, it was not exactly what the district court wanted. But we thought we were being helpful, and we apologize that it turned out it wasn't what the district court wanted. But ultimately you didn't try. You just said what you wanted. You said a redacted to him and an unredacted or redacted to the other side and an unredacted to him, and you had to guess. Now he's got to go through. And based on this affidavit, which really doesn't pertain to what you said, it's generally there. So even I have to look through the affidavit to find out what the devil you're really saying. You don't explain it. Well, I think with all due respect, I mean, we thought we were being helpful. We certainly did not intend to make it difficult for the district court or for this court. But ultimately the district court did reach the merits, and he did not decide on the basis of the fact that we didn't comply with his request. He ultimately did reach the merits, and it's the merits of his decision that is the basis for our appeal here. I hear your answer. Thank you. And I would like to emphasize the types of information here. You know, if the entirety of the rapport were disclosed, competitors would learn the types of items and services. That's, of course, the use of contracts or who it obtains them from, how much it pays. And it shouldn't be too hard to understand that a company really wouldn't want that information to be disclosed to its competitors. You know, information about those sorts of details about its supply chain are proprietary and the sorts of things that companies do closely guard. The district court also, you know, incorrectly held that none of the information that we redacted with respect to the business contact information or the signatures of some of the employees was protected by Exemption 6. You know, this court expressly recognized a nontrivial privacy interest in an employee's e-mail address in Electronic Frontier Foundation. And importantly, Plaintiff has never asserted a public interest in disclosure of any of this information. And, indeed, there's no conceivable public interest here in the redacted signatures or e-mail addresses. So at that point, we're just measuring, we're just weighing. There isn't really a heavy privacy interest, but it certainly outweighs the disclosure. That's correct. There is at least a minimal privacy interest here. And there's absolutely no public interest here. I would emphasize that the only relevant public interest when the court balances is shedding light on the agency's performance of its statutory duties or otherwise letting citizens know what their government is up to. And there's just no, the redacted signatures and contact information just does not let us know what the government is up to. There's no public interest here. If the court has no further questions, I would ask that you vacate the district court's order. Thank you. Good morning. My name is Rex Leike. I'm here on behalf of Sikorsky. With regard to Judge Smith's questions, we understand your frustration about it. I'd just point out Sikorsky wasn't involved in that, didn't have the control over it. If we'd known, maybe we would have been able to do something differently. I'd also submit that this whole question about whether or not an adequate declaration was provided, because District Judge did say on the one hand, he said, I don't want to file an index, which was a little surprising. But on the other hand, he said, I want you to specify in the declaration what specific things are held out or should be redacted. But my point is, it really wouldn't have made any difference, because the district court here didn't parse through the document and say, well, the third paragraph on page two can be withheld. The one after that cannot be withheld. The district court said, nothing can be withheld. So the district court didn't really care about that parsing out. I think that's probably why the district court didn't release anything on that. He simply said, nothing's protected here under Exemption 4. Nothing's protected under Exemption 6. And therefore, I don't care. So it would have been nice if it had been handled differently. I don't think it really made a practical difference here. And the plaintiff's position, while they were unhappy about this, of course, was not, we win because of this conduct. It was simply, well, the government didn't do this, so we had to file a lawsuit, but not that they were supposed to win the case because of the conduct. Now, on the merits here, what we think is fundamentally wrong with the district court's decision is the district court said that you have to show, to get Exemption 4, that the information would cause competitive harm, and you rejected the declaration. There are really two, but essentially, one's more elaborate than the other, but you rejected the two declarations on the basis that they said could, and it's true, they do say could. This could happen. This could happen. But in this court, in the lye and raisins case, said could is enough. And I think it's clear why could has to be enough. Nobody in Sikorsky's position can say what its competitors will do with the information if they get their hands on it. The best Sikorsky can say is, well, if you got this information, you could use it to damage Sikorsky. It can't possibly say, I know that one of our competitors will, in fact, go get the information and decide to use the information against Sikorsky. Maybe it will, maybe it won't. So the best that a declarant can say is it could. And what the district court said was, could's not enough. That was the only basis for rejecting the Exemption 4. And I submit that's simply not the law, or should it be the law, that you have to show in fact harm, competitive harm, will happen. Opposing counsel also says we have to show that there's actual competition. We agree. We do have to show that. But two points about that. The first is this wasn't raised below by the plaintiff, and so they waived it. The second point is our declarations make it very clear that, in fact, we are in competition with a list of companies that we name, and that we're in competition for government contracts, which is what this is all about. So that is the second element of establishing Exemption 4. You've got to show actual competition, and you've got to show it could harm you. We respectfully submit that our declarations establish both of those things here, and therefore the district court simply erred in rejecting Exemption 4. On Exemption 6, I think Judge Smith, you had it just right. Not an overwhelming privacy interest in the e-mail addresses, the phone numbers, and the signatures, but no public interest whatsoever in those being turned over to the plaintiff. They don't show anything, not anything about how the government operates, how it makes decisions, what it does about subcontracting, or anything else. And so in the weighing process, it's appropriate under Exemption 6 to respectfully submit that the district court simply got it wrong because the district court said, well, the interest here in privacy is trivial. You lose. That is not the test. The test is we balance the degree of privacy against the public interest, and any balancing here we submit ends up with Exemption 6 applying. I'd like to reserve the rest of our time for rebuttal unless the court has a question. Thank you. Thank you. Good morning, members. Robert Belshoff of the American Small Business League. This court has briefly touched on what I consider the elephant in the room, and that is, in this case, the trial court below gave the defendants specific instructions, provided them with a primer on how to properly prepare a declaration in order to support an exemption under the Freedom of Information Act, and requested that a fresh declaration, having rejected the initial one, be lodged with the court along with an unredacted copy so the court could evaluate it. Despite the fact that the trial court had very strongly and fairly clearly rejected the initial declaration filed in support of the exemptions, the defendants in that case did absolutely nothing to improve upon that, to provide the additional information which the court was using. But you do agree, don't you, that I don't have any deference to give to the court, that this is to no vote review? Your Honor, I do agree that it's to no vote review. Regardless of what happened, that's the worry. I mean, when I was going through this, my temperature was going up, having been a district judge. But nonetheless, if I'm going to go with to no vote review, I have to look very specifically at the exemption. And if I look at the first exemption on commercial or financial information, either privileged or confidential, did you argue about actual competition in the district court? Your Honor, the argument of actual competition and the nature of that competition is subsumed in other issues we raised. We raised it in our initial... Well, I looked very carefully, and I'm having a tough time saying where that came up. Your Honor, I could locate that for you. Your Honor, I think it's probably a little bit more expeditious if I point out that the trial court in this case, in its order, specifically ordered that the defendant provide a competent testimony as to the nature of the competition, and that is at the written order at GER 24. Do you think that the fact that the trial court said that gets you out of your necessity to point it up to the trial court? Your Honor, at any time that a trial court considers an issue, then there is no waiver of an argument when I bring it secondly. Second, Your Honor, I'd like to just outline the procedural inconsistencies in this case. I never would have had a chance to raise that argument. Let me ask you another question. Let's just go to what it is that we have here. I, with the help of good law clerks, came up with information that I think is yet outstanding. In other words, the parties came to, if you would, an agreement about what would not be produced, what would, and we've got some, for instance, information about Sikorsky's training program and other strategies used to enhance Sikorsky's small business subcontracting program. That was not produced. But the affidavit says if the competitors were to discover what programs they used, they would use the same programs to divert the government's business away from Sikorsky. That wasn't given, as the district court had suggested it, but it was in the affidavit. That seems a possible reason not to give it. I can't find anything in trying to make Exemption 4 apply that suggests that is not a good application. That's not a good response, if you will, to your company wanting that. Your Honor, one of the things I think you need to keep in mind here is that when we go into a FOIA action, when we make a FOIA request, there's a strong presumption that every document the government has its hands on is disclosed. I understand that. Nonetheless, I know what the standard review for Exemption 4 is. That's why I asked the question. The standard of review is whether or not the evidence provided by the declarant would support a conclusion by the court that there would, in fact, be a strong likelihood of economic harm. Not maybe, not could, not possible. A strong likelihood. And this, I think, is where the appellants get confused. It could happen, yes, I could win the lottery tomorrow. Is there a strong likelihood of that happening? No, there isn't. So they need to show a strong likelihood. But how could you ever do that in a competitive area like this? Sikorsky says, look, we're in competition for government contracts. We compete with Bell Helicopters. We compete with these other firms. And if you have pricing information, make sure you have information how we intend to cost what we're going to fund in-house, what we're going to send to outside suppliers, then you now have information about how we're going to structure our deal. That may give you a competitive advantage. How would they possibly prove that you will use that? Your Honor, in your example, you mentioned pricing information. I don't believe that that's an issue here. I do not believe there's any pricing information in the heavily redacted document I've seen. To be honest, oftentimes I can't tell what has been redacted by the government. There are ways in which they've indicated how they determine whether they're going to do something in-house, how they're going to send something out. They've got information in there about how they use their small business subcontractors. If that's useful, and they said that it is useful, then how can they possibly prove that somebody will use that information? Your Honor, does it always have to be conditional? It doesn't always have to say, if Bill Helicopter uses this information, it will be useful to them. But it's still got to be conditional. But you've got to provide the trial court with enough information to where the trial court can understand how this information would likely be used, not would necessarily be used, but would likely be used by a competitor in order to obtain a competitive advantage over the submitter. And in this case, they simply did not do that. They said, well, maybe somebody could use the allegations in the declaration for lawful, legally commissary. There is no evidence as to why, for example, their training program would somehow, if disclosed to an outside party, confer an economic advantage on the outside party, because we don't even know what training program they're talking about. In fact, the affidavit doesn't describe what it is they're training or who it is they're training. But the minute they start into all of these training programs, what they're suggesting is that gives you the chance to do the same thing and divert the governor's business, government's business, away from Sikorsky. That's what the affidavit suggests. And I'm balancing how much information versus you don't have to give something that would give away something that's in-house and that they could use. So I'm using that balancing act. It's not the exact language, but that's what I understand it to be. It is a balancing act, Your Honor, but I must point out that the balance has to be towards the more likely than not. Well, I understand. But in Lewis v. the IRS, it says it's not to be so detailed as to essentially reveal the information sought to be protected. So if I am looking at that, then what you're requesting is then to give them certain training programs. It seems to me that's the information they want to be protected. Your Honor, I think in the Lewis case, what you're citing, you're saying that they are referring to the contents of the declaration. Well, that's what I was looking at because that's all we got. What I want to remind this court is that that declaration was not to be filed. The trial court's instructions were that declaration was to be lodged. It was under seal and accompanying the unredacted version. For reasons unknown to me, the appellate in this case, the DOD, filed the declaration, and they are now trying to justify the fact that the declaration is so conclusory, so lacking in detail, so lacking in evidentiary value, because they did not want to disclose all of this material. Well, the trial court never intended them to disclose the material. The trial court wanted the declaration solely for its own review. I was quite surprised to find it popping up on my ECF. It was supposed to be detailed, far more detailed than I would be entitled to see. And to arrive at the trial court with guidance as to whether or not an exemption applied to the actual document in front of the trial court. And I understand that they certainly would not want to file a document that was any more detailed as to the possible economic damages they could suffer, but they weren't supposed to file anything. Counsel, when I used the word pricing information, you caught me on that. On ER38, this is the supplementary Johnson declaration. She says that it reveals the dollar amounts of actual subcontracts. Okay, so it's not pricing information, but we do have dollar information in these documents. Why isn't that valuable to Scorsese's competitors? To be perfectly honest, Your Honor, I don't see how it would be valuable to Scorsese's competitors. What you know is you know that a certain contract, you don't know what the goods are for, so far as I can tell. You know that there was a certain contractor and class of contracts awarded to a small business, a disabled veteran's business, and the contract amount. I don't think you could deduce client item pricing from that. Again, Your Honors, I have not seen the document other than the redacted version, and the redacted version does not really provide me with enough information to deduce what is actually redacted. But no, I would say that the contract amount would not necessarily confer any economic advantage on a third party that knew that information. But a dollar amount of actual subcontracts wouldn't provide any information to a competitor? Not unless you knew what the quantity of goods supplied was, so you could deduce a client item price. Yeah, well, if it's $10,000, that might be one thing. If it's $10 million, that might be something else. But you could probably deduce quite a bit by the difference between $10,000 and $10 million. You would need to know what was being manufactured and how those were being manufactured, and I do not believe that is contained in this document. At least I found no place in the redacted version which would suggest that information was in there. Now, if the declaration submitted by a Sikorsky officer by the DOD provided the court with that information and explained to the court below, and we had it in front of us, which I guess would never be part of the record, maybe we could figure out a way in which a third party might be able to deduce this information  Otherwise, you simply cannot derive that unless you know the nature of the goods that are being sold and the quantity of the goods being sold. In fact, the contracts for $2 million tells you absolutely nothing. Did you want to address the Exemption 6? Your Honor, the Exemption 6 was another rather last-minute claim made by the Department of Defense. We did not have an opportunity to address that in the trial court. We do feel that there is some benefit to being able to match a signature to the name underneath just to ensure that the correct party, the party that ostensibly signed the document, was in fact the party that signed the document. We were, before our objection to come forward, were objecting to the identities of certain parties, certain employees in Sikorsky who prepared or certified the document. We feel we are entitled to those. Well, but Electric Frontier Foundation really suggests that I have to balance the individual's privacy interest, I guess the extent to which the FOIA's central purpose of opening the action would be served by the disclosure. In this particular matter, I really didn't find any real public interest in the disclosure, but I found, I'm not going to say it was a large, but I would find at least some harm as to the privacy interest that you wanted to get at. I would agree with the trial court below that the privacy interests here are indeed negligible. I guess I'm having a tough time with that because she says this is a personal identifying information which was not disclosed to protect their privacy. I don't agree with that. If I look at Electric Frontier, she couldn't get there. In Electric Frontier, work email addresses were protected. Your Honor, these are matters, FOIA matters are decided on a case-by-case basis. Now it's de novo in front of me. I'm having a tough time understanding why this cannot reach some privacy interest when work email addresses not needed to identify the party communicating with the government are protected from disclosure. That's Electric's found fundamental holding. Yes, Your Honor. What I would point out in this case is to my recollection, having reviewed the redacted document in the wee hours this morning, we're not talking about work email addresses. Your Honor, there are other things, but you don't have a specific reason that I can understand would be better than what was in Electric. Let me give you a more specific reason. This is a document that is in your brief, or is this just something you're coming up with now? To be honest, Your Honor, I would have to review my own brief. Okay. It's been a long time. But let me give you a brief answer to that question. This is a document which essentially is provided under law by a defense contractor basically identifying its plan to incorporate small businesses in the production process. And I think under those circumstances, with this particular document, it is a situation where the identities of the people who are responsible for producing that document and certifying that document is something that the public is entitled to. Thank you. Okay. Thank you. Your Honor, I'd like to see the next one. Please. First, let me deal with that last point. I don't understand it about identities. We disclosed all the identities. The names of the people are in the document. We didn't redact anybody's identities. We redacted their business numbers, their signatures, and email addresses. But you see every single person in there. Another thing I think is important here is that at least, I haven't counted the words or anything, but if you look at the redacted version here, we disclosed something like three-quarters of the document. It's not an instance where we were walking in the door and saying, no, you can't know anything about what we're doing with small business administration. We carefully went through it. And when this appeal came along, we went through it again in light of the decisions and revealed it even more because we wanted to make sure we were completely consistent with this court's decisions. But we haven't tried to withhold everything. What the plaintiff's position comes down to, and I think this training example is a perfect illustration of it, they say, well, we want to know about all the training that you did. What do they say that we failed to disclose about the training? They say you failed to disclose the nature of the program, you failed to disclose who you're training, and you failed to disclose the subjects of training. I don't understand. If we disclosed all that, there'd be nothing that would be exempt here. That's the problem, the level of detail in which they want information provided. In effect, is that Lewis v. IRS case, it would disclose what we'd like to keep from being disclosed. I think they're simply asking for far too much here. And without any meaningful interest in knowing this information, it just doesn't deal with what the government's up to. All it does is say how we try and comply with what the government wants us to do. If they want to know how the government makes decisions, be my guest. That's not what we're here about. What we're here about is not disclosing our ways of addressing how we get small business contracts. Thank you. Sure. Your Honor, I think Counsel for Sikorsky just made all the points, but I would like to emphasize that the specificity that plaintiff is asking for would, in fact, require us to disclose the very information. Excuse me, that Sikorsky is seeking to protect. Thank you.
judges: Kozinski, Bybee, N.R. Smith